METROPOLITAN PROPERTY AND CASUALTY INSURANCE
COMPANY *vs.* ROBERT MORRISON, JR., & others.[1]

Middlesex. April 7, 2011. - August 11, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Insurance,* General liability insurance, Homeowner's insurance, Illegal acts
exclusion, Coverage, Insurer's obligation to defend. *Contract,* Insurance,
Performance and breach.

Statements that an exclusion in a liability policy for "intentional and criminal
acts" applies where the insured intended to commit the conduct that caused
the injury and where the conduct was criminal; that, in a civil action where
the complaint contains allegations of negligence that state or roughly sketch
a claim covered by a liability policy, a plea of guilty to general intent crimes
concerning the same incident does not negate an insurer's duty to defend,
even where the duty to defend would be negated by a criminal conviction
after trial, because a guilty plea is simply evidence that the insured's acts
were intentional and criminal, and is not given preclusive effect; and that, if
the insurer commits a breach of its duty to an insured by failing to provide a
defense, one of the consequences is that, in determining whether the insurer
owes a duty to indemnify the insured for a default judgment, the insurer is
bound by the factual allegations in the complaint as to liability. [357-364]
In a civil action seeking a judgment declaring that the plaintiff insurer had no
duty to indemnify the defendant, who was an additional insured on a home-
owner's policy issued by the insurer, for damages in a personal injury action,
the judge erred in granting summary judgment in favor of the insurer, where
the insurer had disclaimed its duty to defend in the underlying action before
it had obtained a judgment declaring that it had no duty to indemnify;
therefore, this court remanded the matter to permit the judge to determine
whether the insurer owed the defendant a duty to defend in the underlying
action at the time of a default judgment in that action. [364-365]

CIVIL ACTION commenced in the Superior Court Department on
February 23, 2009.

The case was heard by *Bonnie H. MacLeod-Mancuso,* J., on
motions for summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*John J. McMaster* for the defendants.

[1]Brian Langelier and Meredith Langelier.

*John P. Graceffa* (*Richard W. Jensen* with him) for the plaintiff.

*Myles W. McDonough & Christopher M. Reilly,* for Massachusetts Insurance Federation, Inc., amicus curiae, submitted a brief.

*Kimberly E. Winter & J. Michael Conley,* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

GANTS, J. To decide this case, we must answer three questions: First, does an exclusion in a liability policy for "intentional and criminal acts" apply where the insured intended to commit the conduct that caused injury and where the conduct was criminal, or does it apply only where the insured intended the harm resulting from the intentional and criminal acts? We conclude that the exclusion applies where the insured intended to commit the conduct that caused injury and where the conduct was criminal. Second, where an insured is sued in a complaint whose allegations of negligence state or roughly sketch a claim covered by a liability policy, does the liability insurer owe a duty to defend the insured where the insured had pleaded guilty to general intent crimes concerning the same incident? We conclude that a guilty plea does not negate an insurer's duty to defend, even where the duty to defend would be negated by a criminal conviction after trial, because a guilty plea is not given preclusive effect and is simply evidence that the insured's acts were intentional and criminal. Third, if the insurer has committed a breach of its duty to an insured by failing to provide a defense, what consequences arise from the breach where the insured defaults and a default judgment enters? We conclude that one of the consequences of such a breach is that, in determining whether the insurer owes a duty to indemnify the insured for the default judgment, the insurer is bound by the factual allegations in the complaint as to liability.

*Background.* On November 8, 2007, Officer Brian Langelier of the Marlborough police department stopped a motor vehicle driven by Robert Morrison, Jr. (Morrison), after he left a private home that had been under surveillance because of suspected drug dealing. Officer Langelier ordered Morrison out of the vehicle and conducted a patfrisk. During the patfrisk, Morrison "tense[d] up and . . . made a run for it." Officer Langelier attempted to stick his right leg in front of Morrison, but his left

boot "caught on the asphalt" and he fell to the ground in pain with a broken ankle. As a result of this incident and a subsequent altercation with three other police officers as they attempted to restrain him, Morrison pleaded guilty to four counts of assault and battery on a public employee, one count of resisting arrest, one count of disorderly conduct, and one count of possession of a Class B substance (cocaine).

On May 22, 2008, Officer Langelier's attorney mailed a letter to Morrison's parents (Morrisons) informing them that their son had caused serious injury to Officer Langelier when "he resisted being taken into custody" and that "your son has plead[ed] guilty to the related charges, including resisting arrest." The letter also informed the Morrisons that their son had told the police that he resided at their home in Marlborough, that homeowner's insurance policies provide personal liability coverage for such an injury, and that they should cause a copy of the letter to be forwarded immediately to their insurance company, which the Morrisons did. On May 31, 2008, the insurer, Metropolitan Property and Casualty Insurance Company (Metropolitan), wrote the Morrisons to inform them that Metropolitan was asserting a reservation of rights, and "reserves the right to litigate its obligation to defend and/or indemnify you for this loss."[2]

On December 11, 2008, Officer Langelier filed a complaint against Morrison in the Superior Court, alleging that Morrison's "negligent or reckless" conduct in failing "to obey a lawful order to submit to arrest" and attempting to flee caused injury to Langelier.[3] Although Metropolitan was aware that suit had been filed, it did not retain an attorney to defend Morrison in the personal injury action. Instead, on February 23, 2009, Metropolitan filed a complaint in the Superior Court against all the parties in the personal injury action, seeking a judgment declaring that Metropolitan had no duty to indemnify Morrison for the damages alleged by Officer Langelier and his wife. On March 4, 2009, Metropolitan wrote to Morrison, acknowledging that he had sought indemnity and a defense in the personal injury action and disclaiming any obligation to provide indemnity or a defense.

---

[2]Metropolitan Property and Casualty Insurance Company (Metropolitan) sent an identical reservation of rights letter to Robert Morrison, Jr., on June 3, 2008.

[3]Officer Langelier's wife, Meredith Langelier, was also a plaintiff in that action, alleging loss of consortium.

On March 10, 2009, a Superior Court judge entered a default in the personal injury action because no answer or other defense had been filed. On May 13, 2009, after an assessment of damages hearing, the judge in the personal injury action awarded Officer Langelier $84,391.79 and his wife $10,000, and a judgment entered on their behalf against Morrison.

Morrison filed a counterclaim in the declaratory judgment action that alleged that Metropolitan had committed a breach of its duty to defend and indemnify him in the personal injury action, and he sought a declaration that Metropolitan owed him these duties.[4] Morrison then filed a motion for partial summary judgment, seeking a declaration that Metropolitan could not deny coverage in the personal injury action based on the exclusion clause in the homeowner's insurance policy (policy) for bodily injury resulting from "intentional and criminal acts" of an insured because the default judgment entered against him in the underlying tort action established that his negligence, rather than an intentional act, had caused the injuries to Officer Langelier and his wife. Metropolitan filed a cross motion for summary judgment as to all claims on three grounds: (1) that Morrison had made false statements to Metropolitan's investigator regarding his residence at the time of the incident, which constituted "an act of non-cooperation" that prejudiced its ability to evaluate or defend the claim[5]; (2) that, regardless of whether Metropolitan suffered prejudice from Morrison's false statements, he committed a breach of the policy's "[c]oncealment or [f]raud" clause[6]; and (3) that the Langeliers' injuries had resulted

---

[4]Morrison's counterclaim also alleged that Metropolitan violated G. L. c. 93A.

[5]Morrison first told the Metropolitan investigator that he lived in his vehicle at the time of the incident; then said he was "bouncing around," staying at his parents' house, friends' homes, and sleeping in his vehicle; and then said he was staying at his parents' house one to two times per week. He also said that he had moved out of his parents' home after graduating from high school and only started coming back to the home around the date of the incident. The policy's cooperation clause provides: "In the event of an occurrence or offense, we have no obligation to provide coverage under this policy if you fail to . . . cooperate with us and assist us in any matter concerning a claim or suit."

[6]The "[c]oncealment or [f]raud" clause provides: "If any person defined as you conceals or misrepresents any material fact or circumstance or makes any material false statement . . . whether before or after a loss, no coverage is provided under this policy . . . ."

from Morrison's intentional and criminal acts and were therefore excluded from coverage under the policy.

The judge denied Morrison's motion for partial summary judgment, allowed Metropolitan's motion for summary judgment, and declared that Metropolitan had no duty to indemnify Morrison in the personal injury action. The judge concluded: "The meaning of the intentional and criminal acts clause is plain. The policy does not cover bodily injury resulting from an act or omission by the insured that is both intentional and criminal." Having so concluded, the judge found that "there [could] be no doubt" that Morrison engaged in intentional and criminal acts, in part because Morrison had pleaded guilty to assault and battery on a public employee in violation of G. L. c. 265, § 13D, and resisting arrest in violation of G. L. c. 268, § 32B (a), both of which require a general intent to do the acts that ultimately caused the Langeliers' injuries. Without addressing Morrison's argument that the factual allegations as to liability must be accepted as true where a default judgment has entered, the judge concluded that the exclusion for the insured's "intentional and criminal acts" barred coverage for personal liability under the policy. A judgment entered declaring that Metropolitan owed no duty to indemnify Morrison in the personal injury action.

We granted Morrison's and the Langeliers' application for direct appellate review. We agree with the judge's interpretation of the clause excluding personal liability coverage for bodily injury that results from the "intentional and criminal acts" of the insured. But we conclude that, if Metropolitan were in breach of its duty to defend when the default judgment entered, it would be bound by the default judgment that established Morrison's liability for negligence.[7] Because the judge did not determine whether Metropolitan was in breach of the duty to defend when the default judgment entered, we set aside the judge's order on the motions, vacate the judgment, and remand the case for further proceedings consistent with this opinion.[8]

___

[7] The Langeliers' complaint alleged both negligence and recklessness. We speak only of negligence because the distinction between negligence and recklessness does not affect coverage under the policy in this case.

[8] We acknowledge the amicus briefs filed by the Massachusetts Academy of Trial Attorneys and the Massachusetts Insurance Federation, Inc.

*Discussion.* The Morrisons, not their son, are the named insureds in the policy, but relatives who are "resident[s] of the same household" are also insured under the policy. The policy provides that Metropolitan agrees to indemnify an insured for "all sums for bodily injury and property damage to others for which the law holds [the insured] responsible because of an occurrence to which [the] coverage applies," and to defend an insured at its expense against any suit seeking such damages.[9] The policy excludes from coverage "bodily injury or property damage which is reasonably expected or intended by [an insured] or which is the result of [an insured's] intentional and criminal acts or omissions."

"It is settled that an insurer's duty to defend is independent from, and broader than, its duty to indemnify." *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 527 (2005), and cases cited. We recently declared:

> "An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms. *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 796 (2000). The duty to defend is determined based on the facts alleged in the complaint, and on facts known or readily knowable by the insurer that may aid in its interpretation of the allegations in the complaint. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 10-11 (1989); *Desrosiers* v. *Royal Ins. Co.*, 393 Mass. 37, 40 (1984). 'In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.' *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 319 (1983), quoting *Union Mut. Fire Ins. Co.* v. *Topsham*, 441 A.2d 1012, 1015 (Me. 1982). 'However, "when the allegations in the underlying complaint 'lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty

---

[9]An "occurrence" is defined in the policy as "an accident."

to investigate' or defend the claimant." ' *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.,* 439 Mass. 387, 394-395 (2003), quoting *Timpson* v. *Transamerica Ins. Co.,* 41 Mass. App. Ct. 344, 347 (1996)." (Footnotes omitted.)

*Billings* v. *Commerce Ins. Co.,* 458 Mass. 194, 200-201 (2010). "[T]he nature of the claim and not the ultimate judgment against the insured . . . triggers the duty to defend . . . even though the plaintiff may not succeed and the claim may, in fact, be weak or frivolous." A.A. Sansoucy, Liability Insurance Law in Massachusetts 8 (2d ed. 2008). See 14 G. Couch, Insurance § 200:3, at 200-9 (3d ed. 2005) ("insurer has the duty to defend an insured against a lawsuit based merely on the potential of liability under a policy, despite the fact that the insurer could eventually be determined to have no duty to indemnify the insured").

Even where the allegations in the complaint state or roughly sketch a claim covered by a liability policy, we have carved out narrow exceptions to the duty to defend: where there is "undisputed, readily knowable, and publicly available information" in court records that demonstrates that the insurer has no duty to defend, *Billings* v. *Commerce Ins. Co., supra* at 205, and where there is "an undisputed extrinsic fact that takes the case outside the coverage and that will not be litigated at the trial of the underlying action." *Id.* at 200 n.8, quoting *Farm Family Mut. Ins. Co.* v. *Whelpley,* 54 Mass. App. Ct. 743, 747 (2002).

In disclaiming any duty to defend or indemnify, Metropolitan essentially invokes each of these exceptions. First, it contends that Morrison's guilty plea to charges that he resisted arrest and committed an assault and battery on Officer Langelier establishes that Langelier's injury was the result of Morrison's intentional and criminal acts and is therefore excluded from coverage. Second, it contends that it is undisputed that Morrison concealed or misrepresented material facts regarding his residence when questioned by an insurance investigator on July 7, 2008, and therefore committed a breach of the policy's cooperation clause and its concealment or fraud clause.

Where there is uncertainty as to whether an insurer owes a duty to defend, the insurer has the option of providing the insured with a defense under a reservation of rights, filing a declaratory

judgment action to resolve whether it owes a duty to defend or to indemnify, moving to stay the underlying action until a declaratory judgment enters, and withdrawing from the defense if it obtains a declaration that it owes no duty to the insured. See *Sarnafil, Inc.* v. *Peerless Ins. Co.*, 418 Mass. 295, 304 (1994). "A declaratory judgment of no coverage, either by summary judgment or after trial, does not retroactively relieve the primary insurer of the duty to defend; it only relieves the insurer of the obligation to continue to defend after the declaration." 14 G. Couch, Insurance, *supra* at § 200:48, at 200-65 to 200-66. Where material facts as to the duty to indemnify are in dispute, an insurer has a duty to defend until the insurer establishes that no potential for coverage exists. *Id.* at 200-21.

Metropolitan did not pursue this option. Instead, it disclaimed a duty to defend without first obtaining a judicial declaration, and failed to file an answer or responsive motion to the Langeliers' personal injury complaint. By the time Metropolitan moved for summary judgment on October 26, 2009, a default judgment against Morrison had already issued in the underlying personal injury action. But this did not mean that adjudication of the duty to defend had been rendered moot.

Where, as here, the insurer disclaims a duty to defend and the underlying case has gone to judgment, the duty to defend remains entwined with the duty to indemnify because, where the insurer has committed a breach of the duty to defend, the breach yields two consequences that may affect the duty to indemnify. The first is that a breach of the duty to defend is a breach of the insurance contract, and the insured is entitled to contract damages caused by the breach. See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 763 (1993) ("When an insurer's good faith refusal to defend an insured is ruled to have been unjustified, there is no reason not to apply normal contract damages principles"). See also *Liquor Liab. Joint Underwriting Ass'n of Mass.* v. *Hermitage Ins. Co.*, 419 Mass. 316, 323 (1995) (insurer that commits breach of duty to defend liable for natural consequences of breach of contract that placed insured in worse position); 14 G. Couch, Insurance, *supra* at § 205:64, at 205-71 (insurer liable for damages traceable to its unjustifiable failure to defend, "largely to prevent injury to the

insured, but also to prevent the insurer from profiting from its own wrong"). In these circumstances, an insurer's obligation to pay the default judgment arises from its breach of contract, not its duty to indemnify, but the financial consequence is the same — the insurer is responsible for payment of the default judgment.

Apart from consequences arising from a breach of contract, an insurer's breach of a duty to defend may also trigger a duty to indemnify because an insurer in breach of its duty to defend "is bound by the result of [the underlying] action as to all matters therein decided which are material to recovery by the insured in an action on the policy." *Miller* v. *United States Fid. & Guar. Co.*, 291 Mass. 445, 448 (1935). See *Polaroid Corp.* v. *Travelers Indem. Co.*, *supra* at 763 n.20 (where underlying case went to judgment, insurer in breach of duty to defend was bound by result of trial "as to all material matters decided in that action that bear on the coverage issue"); *Jertson* v. *Hartley*, 342 Mass. 597, 603 (1961) (same). See also 1 New Appleman Law of Liability Insurance § 6.03[3], at 6-24 (2011) ("If the insurer breaches the duty to defend, it will be bound as to the fact and amount of the insured's liability, even if determined by a default judgment").

Where a defendant defaults, the factual allegations in the complaint as to liability are deemed to be admitted by the defendant and treated as if they are true. See *Nancy P.* v. *D'Amato*, 401 Mass. 516, 519 (1988) ("When, as here, a defendant is defaulted, well-pleaded facts are deemed to be admitted . . ."); *Multi Technology, Inc.* v. *Mitchell Mgmt. Sys.*, 25 Mass. App. Ct. 333, 334-335 (1988) ("Upon default . . . the factual allegations of a complaint are accepted as true for purposes of establishing liability"). See generally J.W. Smith & H.B. Zobel, Rules Practice § 55.1, at 249-250 (2d ed. 2007).

Where, as here, the plaintiff in the underlying action brings a negligence claim and the factual allegations in the complaint are sufficient to support such a claim, the default judgment conclusively establishes negligence as to the defendant insured and, if the insurer has committed a breach of its duty to defend, as to the insurer. See *Blais* v. *Quincy Mut. Fire Ins. Co.*, 361 Mass. 68, 70-71 (1972) ("In the absence of fraud or collusion the insurer would be bound by a judgment entered by default");

*MacBey* v. *Hartford Acc. & Indem. Co.*, 292 Mass. 105, 106 (1935) (where defendant insurer failed to defend and insured defaulted in underlying claim, insurer barred in subsequent action from offering evidence showing that there was no gross negligence, because "[t]hat question was foreclosed by the judgment" in underlying action). Therefore, where an insurer commits a breach of its duty to defend and the insured defaults, the insurer is bound by the factual allegations in the complaint as to negligence in determining whether the insurer has a duty to indemnify; where an insurer did not breach its duty to defend, it is not bound by the factual allegations of negligence in determining indemnification.[10]

Because the default judgment in the underlying action entered before the judge decided the motions for summary judgment in the declaratory judgment action, the allegations of negligence in the Langeliers' complaint would be conclusively established with respect to Metropolitan's duty to indemnify if Metropolitan were found to have committed a breach of its duty to defend. A finding of negligence is inconsistent with a finding of an intentional and criminal act. *Miller* v. *United States Fid. & Guar. Co.*, *supra* at 447 (plaintiff could not recover for wilful and wanton conduct on count that alleged only negligence because "negligence and wilful and wanton conduct are so different in kind that words properly descriptive of the one commonly exclude the other"). Therefore, the exclusion from coverage for intentional and criminal acts would not apply if Metropolitan committed a breach of its duty to defend and thus was bound by the finding of negligence in the underlying action. And if it were so bound, Metropolitan would have an obligation to indemnify Morrison for the amount of the default judgment unless another exclusion applied that was not inconsistent with negligence or unless Morrison was not an insured because he

---

[10]Metropolitan argues that it is not bound by the finding of negligence arising from the default judgment under the doctrine of issue preclusion or collateral estoppel because the issue of negligence was not actually litigated in the underlying action. We do not, however, conclude that it may be bound because of issue preclusion. Rather, it may be bound only if it committed a breach of its duty to defend, because "an insurer who has wrongfully refused to defend its insured cannot relitigate coverage issues." *Maimaron* v. *Commonwealth*, 449 Mass. 167, 175 (2007).

did not reside in the Morrisons' household at the time of the incident.[11]

In deciding the summary judgment motions, the judge did not consider or decide whether Metropolitan had committed a breach of its duty to defend; nor was the judge asked to do so by the parties. Because the facts alleged in the complaint state a negligence claim that is covered by the policy, Metropolitan owes Morrison a duty to defend against the claim unless it can establish one of the two narrow exceptions: that court records undisputedly demonstrate that Morrison's acts fell within the exclusion for acts that were intentional and criminal, or that his statements to the insurance investigator constitute undisputed extrinsic evidence that he committed a breach of the policy's cooperation clause or its concealment or fraud clause.

Because the first exception relies on the interpretation of the language in the policy exclusion that bars coverage in liability actions for bodily injury to a third party "which is reasonably expected or intended by [the insured] or which is the result of [the insured's] intentional and criminal acts or omissions," we turn now to that issue. The interpretation of language in an insurance contract "is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense." *Boston Gas Co.* v. *Century Indem. Co.*, 454 Mass. 337, 355 (2009), quoting *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997). "Every word . . . 'must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.' " *Boston Gas Co.* v. *Century Indem. Co.*, *supra*, quoting *Allmerica Fin. Corp.* v. *Certain Underwriters at Lloyd's, London*, 449 Mass. 621, 628 (2007). "If in doubt, we 'consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.' " *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 518 (2005), quoting *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass. 844, 849 (1993). When confronting ambiguous

---

[11]While the personal injury complaint alleged that Morrison resided at the address of the named insureds set forth on the declarations page of the policy, Metropolitan would not be bound by this allegation even if it had committed a breach of its duty to defend, because this allegation was not relevant to liability.

language, we construe the policy in favor of the insured and against the drafter, who is invariably the insurer, unless specific policy language is controlled by statute or prescribed by another authority. See *Massachusetts Insurers Insolvency Fund* v. *Smith,* 458 Mass. 561, 565 (2010). "This rule of construction applies with particular force to exclusionary provisions." *Hakim* v. *Massachusetts Insurers' Insolvency Fund, supra* at 282. See *Allmerica Fin. Corp.* v. *Certain Underwriters at Lloyd's, London, supra* ("insured generally bears the burden of proving that a particular claim falls within a policy's coverage . . . while an insurer has the burden of proving the applicability of a particular exclusion").

We discern no ambiguity in the exclusion for "intentional and criminal acts." It excludes claims where the insured intended to commit the conduct that caused injury and where that conduct was criminal. The exclusion therefore does not include criminal conduct where the insured acted negligently or recklessly.

Morrison and the Langeliers contend that the exclusion must be interpreted to apply only where an insured intended the harm inflicted on the third party. They rely on our holding in *Preferred Mut. Ins. Co.* v. *Gamache,* 426 Mass. 93, 94 (1997) (*Gamache*), where we concluded that the intentional act exclusion in a liability policy required a showing that the insured intended to cause harm to the injured third party. We noted that the interpretation of the exclusion proffered by the insurance company in that case — "that the exclusion bars any accident resulting from a volitional act of the insured irrespective of the insured's intent to cause injury — lacks any limiting principle and would logically tend to negate coverage in a substantial number of, if not all, accidents." *Id.* The exclusion at issue in *Gamache,* however, was for "bodily injury . . . which results directly or indirectly from . . . an intentional act of an insured." *Id.* By limiting the exclusion to acts that are *both* intentional and criminal, the Metropolitan policy poses no risk that the exclusion may be interpreted so broadly as to effectively negate the policy's liability coverage for accidents.

In *Gamache,* we invited insurers to "deal with the problem created by cases like this one by drafting appropriately worded exclusions for injuries to a third party resulting from an insured's

intentional torts or criminal acts," and cited with approval an Oregon case that upheld an exclusion for the insured's "criminal acts." *Id.* at 95, citing *Allstate Ins. Co.* v. *Sowers,* 97 Or. App. 658, 660 (1989). The narrower language of the exclusion in the Metropolitan policy, which excludes acts only where they are both criminal and intentional, is in accord with our guidance in *Gamache.*

Under our interpretation of the exclusion, Metropolitan would have no duty to defend if Morrison had been convicted of resisting arrest or the assault and battery of Officer Langelier after having litigated the issue of his guilt at trial, because "a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution." *Aetna Cas. & Sur. Co.* v. *Niziolek,* 395 Mass. 737, 742 (1985). But where, as here, a criminal conviction follows a guilty plea, the plea may be offered as evidence of a defendant's guilt in subsequent civil litigation but it is not given preclusive effect. *Id.* at 747-748. Because the plea "may be explained and reasons shown for entering it," a plea is "not necessarily conclusive as to the facts admitted." *Id.* at 747, quoting *Morrissey* v. *Powell,* 304 Mass. 268, 269 (1939). As a result, while Morrison's plea may be evidence that his acts were intentional and criminal, a conviction obtained through a plea is not a court record that definitively and undisputedly demonstrates that an exclusion applies that negates an insurer's duty to defend.

*Conclusion.* Because the judge based her conclusion that Metropolitan had no duty to indemnify in large part on Morrison's guilty pleas and because the judge determined that Metropolitan had no duty to indemnify without first determining whether it owed a duty to defend at the time of the default judgment, we vacate the declaratory judgment and set aside the allowance of Metropolitan's motion for summary judgment as well as the denial of Morrison's motion for partial summary judgment. We remand the case to the Superior Court for further proceedings consistent with this opinion.

On remand, the judge shall determine whether Metropolitan owed Morrison a duty to defend at the time of the default judgment. Under this opinion, because Morrison's conviction of

crimes of general intent arising from the incident resulted from a guilty plea rather than an adjudication at trial, Metropolitan owed Morrison such a duty unless the judge concludes, based on undisputed facts, that Morrison's statements to the insurance investigator constituted a breach of the cooperation or concealment or fraud clauses of the policy and that he thereby forfeited any right to coverage. If the judge were to find that Metropolitan owed Morrison a duty to defend and committed a breach of that duty, Metropolitan would be bound by the allegations of negligence in the Langeliers' complaint and would have an obligation to indemnify Morrison for the amount of the default judgment unless another exclusion applied that was not inconsistent with negligence or unless Morrison was not an insured because he did not reside in the Morrisons' household at the time of the incident.

*So ordered.*