MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 196
Docket:      Lin-16-547
Argued:      May 12, 2017
Decided:     September 19, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ERIC A. TEELE

v.

LISA WEST-HARPER

HJELM, J.

[¶1]  Eric A. Teele appeals from a judgment in which the District Court (Wiscasset, *Mathews, J.*) granted his motion to modify his child support obligation to his former wife, Lisa West-Harper, but denied his request to be reimbursed for support he had paid during a period when he was disabled, even though as a result of his disability the parties' two minor children received a retroactive lump-sum dependent benefit from the Social Security Administration covering the same period when he had made payments.  Teele argues that the court erred by concluding, based on 19-A M.R.S. § 2107 (2016), that it lacked authority to apply a "credit" for the retroactive dependent benefits against child support he had paid while the original child support order was in effect.  He argues alternatively that the court erred by making the

amended child support order retroactive only to the date he served his motion to modify on West-Harper, *see* 19-A M.R.S. § 2009(2) (2016), so that it did not give him credit for the retroactive lump-sum dependent benefit. Finding no error in the court's interpretation and application of sections 2107 and 2009(2), we affirm the judgment.

## I. BACKGROUND

[¶2] The following facts are not in dispute. The parties were divorced by a judgment issued in March 2008. As part of the divorce judgment, West-Harper was granted primary residence of the parties' two minor children and Teele was ordered to pay child support.

[¶3] In approximately September 2014, Teele filed a petition for disability benefits with the Social Security Administration (SSA). Teele continued to make child support payments while his petition for disability benefits was pending, and he was current on his support obligation in March 2016 when the SSA notified him that his petition had been granted. As a result of Teele's disability benefit determination, the SSA sent West-Harper notices stating that each child would receive a payment of $6,190 as retroactive dependent benefits for the period of October 2014—the date the SSA had determined Teele's entitlement began—through February 2016. The notices

further informed West-Harper that beginning in March 2016, each child would receive monthly dependent benefits. *See* 42 U.S.C.S. § 402(d)(1)-(2) (LEXIS through Pub. L. No. 115-51) (providing that every dependent child of an individual who is entitled to disability insurance benefits is entitled to a monthly "child's insurance benefit"). During the period covered by the lump-sum back payment of benefits to each child, West-Harper therefore received both child support from Teele *and* dependent benefits for the children.

[¶4] In May 2016, Teele filed a motion to modify the 2008 child support order.[1] *See* 19-A M.R.S. § 2009(1) (2016); M.R. Civ. P. 120. In that motion as later amended, Teele asserted that his child support obligation should be modified because both parties' incomes had changed since the divorce judgment was issued and because West-Harper had received an "overpayment" of child support for the period covered by the retroactive dependent benefits from the SSA. West-Harper ultimately contested only Teele's request for a modification or adjustment based on the alleged overpayment of child support.

[¶5] At a hearing held in October 2016, where the parties presented evidence consistent with the facts described above, the parties agreed with the

---

[1] In his motion and at the hearing, Teele also requested that the court modify several other aspects of the divorce judgment. The court resolved those issues based on the parties' agreement, and they are not relevant to this appeal.

court that because of discrepancies among various records, the evidence would not allow the court to properly determine the specific amount of child support that Teele argued he had overpaid as a result of the children's receipt of retroactive dependent benefits. They further agreed that, before that issue should be addressed further, the court should make the threshold legal determination of whether it had the authority to order West-Harper to reimburse Teele for those alleged overpayments pursuant to 19-A M.R.S. § 2107, which provides a "credit" to a disabled obligor parent "for the dependent benefits paid to the child" because of the obligor's disability.[2]

[¶6] The following month, after the parties had filed post-hearing briefs on the effect of section 2107, the court issued an order on Teele's motion to modify. Based on the parties' agreement, the court issued an amended child support order reducing Teele's child support obligation to account for changes in the parties' incomes. In the amended child support order, the court also found that the children received dependent benefits as a result of Teele's disability and that "[i]n any month that the benefits . . . meet or exceed the total

---

[2] Because the court ultimately concluded that Teele was not entitled to a credit for the amount of the dependent benefits paid retroactively to the children, the court did not need to determine the amount at issue. For the same reason, any factual dispute about that issue is immaterial to our analysis.

monthly support obligation, [Teele] shall receive a credit for the total amount of support due."

[¶7]  Based on 19-A M.R.S. § 2009(2), however, the court determined that the revised support obligation, including the credit for dependent benefits, would relate back only to May 2016, when Teele served his motion to modify on West-Harper.  The court concluded that it lacked statutory authority to grant Teele a "credit"[3] against payments he had made before May 2016 based on the lump-sum dependent benefits paid to the children, because section 2107 provides that a credit for dependent benefits "applies [only] to the extent it is identified" in a child support order, and the 2008 order "did not check the applicable box which references the Social Security offset."  The court also noted that if it were to order West-Harper to reimburse Teele as he requested, she would be "divest[ed] of . . . funds that will not be available to the home in which the children primarily reside," with "no warning when she accepted the child support payments that she would [someday] have to repay them."  Accordingly, the court denied Teele's request for a credit in the amount of the lump-sum payment of retroactive dependent benefits to the children.

---

[3]  In this case, the "credit" is more accurately labeled a "reimbursement," because Teele is asking that West-Harper pay back child support to the extent that the children received retroactive dependent benefits for the same period he had paid that support.

6

[¶8]   After the court denied his motion to reconsider, Teele timely appealed.  *See* 14 M.R.S. § 1901 (2016); M.R. App. P. 2(b)(3).

## II.  DISCUSSION

[¶9]  The issue in this case is whether the court correctly interpreted and applied sections 2107 and 2009(2) in denying Teele's request for reimbursement of child support he had paid during a period when he was later determined to be disabled—a period that began more than a year before he filed his motion to modify—even though, as a result of that disability determination, the children received retroactive dependent benefits from the SSA covering the same period.   Teele presents two arguments: first, that pursuant to section 2107 he was entitled to be reimbursed for past payments of child support to the extent of the retroactive dependent benefits from the SSA and, second, that if section 2107 did not allow that reimbursement directly, the amended child support order that explicitly allowed the credit should have been applied retroactively to cover the entire period of his disability as determined by the SSA.  We address Teele's arguments in turn.

[¶10]  In doing so, we review a court's interpretation and application of a statute de novo, looking first to the plain meaning of the statutory language to give effect to the Legislature's intent.  *Verite v. Verite*, 2016 ME 164, ¶ 9,

151 A.3d 1; *Walker v. Walker*, 2005 ME 21, ¶ 11, 868 A.2d 887. We construe statutory language to "avoid absurd, illogical or inconsistent results" and to give each word meaning. *Wong v. Hawk*, 2012 ME 125, ¶ 8, 55 A.3d 425 (quotation marks omitted). Only if the statutory language is ambiguous will we consider extrinsic indicia of legislative intent, such as legislative history. *Walker*, 2005 ME 21, ¶ 11, 868 A.2d 887.

A. Entitlement to a Credit for Dependent Benefits

[¶11] Section 2107 provides that when "a child receives dependent benefits as a result of the obligor parent's disability" and a court "establish[es], review[s,] or modif[ies]" a parent's "child support obligation or debt[, it] shall give the obligor parent credit for the dependent benefits paid to the child."[4] To

---

[4] We note that 19-A M.R.S. § 2107 (2016) applies when a court establishes, reviews, or modifies a parent's "child support obligation *or debt*." (Emphasis added.) Assuming that a "child support . . . debt" refers to an arrearage, that aspect of the statute does not apply here because Teele was not in arrears. We therefore do not address whether a disabled obligor parent who *fails* to make child support payments while his or her disability benefit application is pending would be entitled to seek a credit against that arrearage pursuant to section 2107 based on the obligee parent's receipt of retroactive benefits from the SSA, when a parent—such as Teele—who satisfied his court-ordered support obligation would not be so entitled.

In this context, Teele alludes to equal protection rights. He has not, however, presented a constitutional argument to us that is meaningfully developed, and he did not raise the issue at all in the trial court. As we have held, a party waives an issue on appeal by failing to raise it in the trial court, even where the issue relates to a constitutional protection. *See Rowland v. Kingman*, 629 A.2d 613, 615 n.1 (Me. 1993); *Cyr v. Cyr*, 432 A.2d 793, 797-98 (Me. 1981). Therefore, although we address Teele's *statutory* argument that, pursuant to the terms of section 2107, he is entitled to a credit for the dependent benefits paid to his children, we do not consider any argument that section 2107 is *constitutionally* flawed and for *that* reason cannot be applied as the court did.

8

do so, the court must "calculate the obligor's child support obligation" pursuant to the child support guidelines and "issue a child support order" on that basis. *Id.* § 2107(1); *see also* 19-A M.R.S. § 2006 (2016). The child support obligation itself "may not be reduced by the dependent benefits paid to the child." *Id.* § 2107(1). Instead, the court "shall" grant the obligor a *credit* against *that* child support obligation in the amount of the dependent benefits. *Id.* § 2107. For this to happen, however, the statute requires the court to expressly find that (1) "the child currently receives dependent benefits as a result of the obligor parent's disability" and (2) "the receipt of these benefits satisfie[s] part or all of the

---

Even if Teele is seen as having preserved an equal protection challenge, however, it would not be persuasive. The issue at bar does not affect a fundamental right or implicate a suspect classification. Section 2107 would therefore be examined to determine if there is a rational basis for differentiating between obligors who are not in arrears and those who are, placing on Teele the burden of demonstrating by "clear and irrefutable evidence" that the dichotomy is arbitrary and irrationally discriminatory. *Norris v. State*, 541 A.2d 926, 929-30 (Me. 1988); *see also In re D.P.*, 2013 ME 40, ¶¶ 16-17, 65 A.3d 1216. Again, even assuming that section 2107 would allow a delinquent obligor to benefit from a fully retroactive credit for dependent benefits, which is not at all certain, *see, e.g.*, *Brochu v. McLeod*, 2016 ME 146, ¶ 17, 148 A.3d 1220 ("By virtue of its status as a money judgment, a child support arrearage is not subject to the defense of laches."); *Cloutier v. Turner*, 2012 ME 4, ¶ 9, 34 A.3d 1146 (stating that there is no statute of limitations on a claim of overdue child support because "child-support arrearages are considered money judgments."); *Walsh v. Cusack*, 2008 ME 74, ¶ 7, 946 A.2d 414 ("[T]he right to the payment of [child] support becomes vested as it becomes due. Each payment due pursuant to an order of support becomes a judgment debt as of the due date." (alterations and quotation marks omitted)), Teele has not met the high standard of showing that the statute is arbitrary and irrational. If Teele were entitled to a credit or reimbursement for the child support he had paid during the period also covered by the dependent benefits, then West-Harper would be required to disgorge those past payments. As the trial court observed, that prospect undermines the obligee parent's ability "to rely upon the financial assurance provided by an outstanding court order" and exposes that parent to repaying an amount he or she would not have known was in dispute. *See Wood v. Wood*, 407 A.2d 282, 287 (Me. 1979). This outcome is contrary to the legislative policy underlying the child support statute to provide for the welfare of minor children. *Id.* For these reasons, any constitutional challenge that Teele may have preserved is unpersuasive.

obligation." *Id.* §§ 2107(2)(A), (B). The resulting credit "may not exceed the amount of the current obligation for the period for which the benefits are paid" and "may not be given toward a past or future obligation for dependent benefits that exceed the current obligation."[5] *Id.* § 2107(2)(C).

[¶12]  We have held that section 2107 entitles an obligor parent to "receive a credit for dependent benefits *only* after a court *first determines* the obligor's child support obligation and issues a child support order," which must include the findings specified in that statute, namely, that "a child's receipt of dependent benefits satisfies part or all of the obligation, and that the obligor must receive credit against the established obligation." *Young v. Young*, 2009 ME 54, ¶ 13, 973 A.2d 765 (emphasis added) (alterations and quotation marks omitted).  In other words, by its unambiguous terms, section 2107 prescribes the process by which an obligor may become eligible for a credit based on dependent benefits paid to a child and applied against a support obligation.  The eligibility for an offset against a particular child support payment must be established in the order that imposes the payment obligation

---

[5]  Teele is not seeking a credit against an obligation accruing in a period different from the one covered by the lump-sum payment of retroactive dependent benefits to the children, and he seeks reimbursement for the retroactive benefits only to the extent that the benefits satisfied his obligation and not any excess.  The parameters of the relief Teele seeks is in keeping with the requirements of section 2107(2)(C)—namely, that a credit "may not exceed the amount of the current obligation for the period for which the benefits are paid" and "may not be given toward a past or future obligation for dependent benefits that exceed the current obligation."

to which the offset will be applied, irrespective of whether it is the initial or—as is the case here—an amended child support order. *See id.*; *see also* 19-A M.R.S. §§ 2006, 2009(1), (2). In this way, a credit for dependent benefits can only be established in the same order that creates the child support obligation to which that credit applies. If—as Teele argues—an obligor parent were entitled to a credit for dependent benefits paid to a child even if the child support order did not allow such a credit for the period covered by the benefits, the entire process prescribed in section 2107 would be meaningless. Teele's interpretation of section 2107 therefore runs contrary to the salutary principle of statutory construction that "[w]ords in a statute must be given meaning and not treated as meaningless and superfluous." *Wong*, 2012 ME 125, ¶ 8, 55 A.3d 425 (quotation marks omitted).

[¶13] We therefore conclude that the court did not err by determining that a credit for dependent benefits applies only "to the extent it is identified" in the child support order applicable to the period of benefit entitlement. Here, the 2008 child support order did not include a finding that Teele was entitled to a credit for dependent benefits paid to the children. Accordingly, the court correctly concluded that it was without statutory authority to grant Teele any credit against child support he had paid while that order was in effect. *See*

*Roberts v. Roberts*, 1997 ME 138, ¶ 9, 697 A.2d 62 ("[J]urisdiction over divorce and incident[al] relief is purely statutory. The authority of the divorce court over matters of . . . [the] support of minor children must be found in the statutes or it does not exist." (quotation marks omitted)). Rather, the court was authorized to grant a credit only against payments made pursuant to an *amended* child support order expressly stating that Teele was entitled to such a credit. *See* 19-A M.R.S. § 2107; *Young*, 2009 ME 54, ¶ 13, 973 A.2d 765. This leads us to Teele's second argument.

B.    Temporal Application of the Amended Child Support Order

[¶14]    Because the child support order included in the parties' 2008 divorce judgment does not itself allow Teele to receive a credit for dependent benefits received by the children, the next question is whether the court correctly determined based on section 2009(2) that its *amended* child support order could relate back only to May 2016, when Teele served his motion to modify on West-Harper, and that the credit for dependent benefits granted in *that* order therefore could not encompass the lump-sum back payment of benefits for the period of October 2014 to March 2016.

[¶15]    Section 2009(2) provides that a child support order "may be modified retroactively but only from the date that notice of a petition for

modification has been served upon the opposing party." Here, Teele did not serve his motion to modify the 2008 child support order on West-Harper until May 13, 2016—approximately a year and a half after he had filed his petition for disability benefits and two months after that petition had been granted. Accordingly, based on the plain language of section 2009(2), the court correctly determined that its order granting Teele's motion to modify child support, including Teele's entitlement to "a credit" for dependent benefits paid to the children, was retroactive only to the May 2016 date of service.

[¶16] Teele argues that the court was authorized to make the amended child support order retroactive to October 2014 pursuant to a common law framework developed in *Wood v. Wood*, 407 A.2d 282, 287-88 (Me. 1979), a case we decided before section 2009(2) was enacted. In that case, we stated that an order modifying child support may only have prospective effect except that a court may, as a discretionary matter, modify child support retroactive to the date when the obligee was no longer the custodial parent because, for example, the child died, became emancipated, or reached majority; or to the date the motion to modify was filed, which is an event that puts the obligee on notice of a possible change in child support.[6] *Wood*, 407 A.2d at 287-88. Teele

---

[6] After we issued our decision in *Wood*, the Legislature enacted section 2009(2), which codified only one of the two exceptions to the general rule of prospective application we announced in that

argues that under the first exception, if a child support obligation may be terminated retroactive to the date that the obligee was no longer the custodial parent, then the *obligor* should be relieved of his child support obligation when the child becomes eligible for dependent benefits that are a substitute for the court-ordered child support.

[¶17] This argument misconstrues the nature of the benefit credit allowed pursuant to section 2107. As we have discussed, *see supra* ¶¶ 11-12, that statute requires the court to determine the obligor's child support obligation and affirmatively issue a child support order. Then, if the court makes the findings prescribed in the statute, each payment made during the period covered by that order is offset by dependent benefits received by the child and covering the same period as the payment. Section 2107 therefore does not relieve the obligor of the responsibility to pay child support. It merely controls how that obligation is to be fulfilled.

---

case, namely, that the court is authorized to make an amended child support order relate back to the date when the motion to modify was served on the opposing party. *See* P.L. 1995, ch. 694, § B-2 (effective Oct. 1, 1997) (codified at 19-A M.R.S. § 2009(2) (2016)). The Legislature elected *not* to codify the second exception, which is the one Teele relies on here. Although, since the effective date of section 2009(2), we have made reference to the exception that is the basis of Teele's argument, we have not had occasion to decide whether its omission in section 2009(2) means that it is no longer available. *See Dostanko v. Dostanko*, 2013 ME 47, ¶ 11, 65 A.3d 1271; *Bartlett v. Anderson*, 2005 ME 10, ¶ 18, 866 A.2d 829, *superseded by statute on other grounds by* 19-A M.R.S. § 2006(8)(G) (2016), *as recognized in Lund v. Lund*, 2007 ME 98, ¶ 22, 927 A.2d 1185; *Beck v. Beck*, 1999 ME 110, ¶ 8 n.4, 733 A.2d 981; *Roberts v. Roberts*, 1997 ME 138, ¶ 9, 697 A.2d 62. Because we conclude that Teele would not benefit from that common law exception in any event, this case does not present the occasion for us to address whether *Wood* remains good law in full.

14

[¶18]   The situation governed by section 2107, therefore, is not analogous to the exception to the general rule of prospective application we outlined in *Wood*, where the obligee is no longer the custodial parent of the child and therefore has *no* custodial responsibilities with respect to that child, including the obligation to provide a share of support determined by the child support order.   Rather, both Teele and West-Harper have a continuing responsibility to support their children, and their responsibilities are unaffected by the children's receipt of dependent benefits arising from Teele's disability.

[¶19]  This is particularly true where there already exists a mechanism for Teele to have achieved the relief that he now seeks post hoc.  When Teele applied for disability benefits from the SSA in approximately September 2014, he also could have filed a motion to modify the then-current, 2008 child support order to include the findings required by section 2107 that would have allowed him to receive credit for dependent benefits if his application were approved. Although Teele argues that it would have been unreasonable for him to take this step because of the length of time the application remained pending before the SSA, the interplay between sections 2107 and 2009(2) provides a party in Teele's position with a legitimate justification for filing a motion, even when the

motion foreseeably cannot be resolved until after the SSA application process has run its course.

[¶20]  Assuming, but not deciding, that the common law exception announced in *Wood* has continuing vitality despite the Legislature's response to that decision, our decision in that case is not availing to Teele.  The court therefore did not err by declining to make the amended child support order retroactive to a date earlier than when West-Harper was served with Teele's motion to modify.

The entry is:

Judgment affirmed.

---

Jonathan C. Hull, Esq. (orally), Damariscotta, for appellant Eric A. Teele

William M. Avantaggio, Esq. (orally), Damariscotta, for appellee Lisa West-Harper

Wiscasset District Court docket number FM-2007-201
For Clerk Reference Only