STATE OF MAINE
ANDROSCOGGIN, ss

SUPERIOR COURT
DOCKET NO. AP-19-10

MAR 24 '20 AM9:20

Grimmel's Mobile Home Park, LLC )
                                )
   *Plaintiff/Appellee,*   )
                                )
v.          )    **Order on Appeal**
                                )
Linda Cleaves,     )
                                )
   *Defendant/Appellant.* )

This case is before the court on appeal by Defendant/Appellant Linda Cleaves pursuant to

M.R. Civ. P. 80D(f)(1), on a question of law.

### *Factual and Procedural History*

Plaintiff/Appellee Grimmel's Mobile Home Park, LLC (GMHP) owns and operates a

mobile home park. Defendant/Appellant Linda Cleaves (Cleaves) lives in a mobile home she

owns on land rented from GMHP. On May 24, 2019, GMHP served Cleaves with a notice to

quit for non-payment of rent. That notice states in relevant part as follows:

> You can negate the effect of this notice as it applies to rent arrearage if you pay
> the full amount due, before thirty (3) days from the date you receive this notice.
> If you pay the amount of rent due as of the date of this notice before the notice
> expires, then this notice as it applies to rent arrearage is void. As of the date of
> this notice, the rent arrearage is $ 466.00 . You should arrange to make payment
> arrangements by contacting Betty Grimmel . . . .

*Plaintiff's Exhibit A.* The testimony is undisputed that the $466 rent arrearage was calculated at

$225 for rent, plus a late fee of $8, for each of two months. GMHP then filed a complaint for

forcible entry and detainer in the Lewiston District Court on July 9, 2019. Trial was held on July

17, 2019, and a judgment of eviction was entered for GMHP that day. Cleaves filed her notice

of appeal on July 22, 2019. The parties have filed their briefs and the matter is in order for

decision.

1

### *Issue Presented and Standard of Review*

The matter is before the court on one question: whether the notice to quit complies with statutory requirements or is fatally defective because the rent arrearage amount includes late fees. The issue is one of statutory interpretation, a question of law which is reviewed de novo on appeal. *In re Children of Mary J.*, 2019 ME 2 ¶ 8; *Passamaquoddy Water Dist. v. City of Eastport*, 1998 ME 94 ¶ 5.

### *Analysis*

The parties agree that the eviction notice is governed by 10 M.R.S. § 9097. Subsection (1)(A) of the statute states:

> A tenancy may be terminated by a park owner or operator only for one or more of the following reasons:
>
> A. Nonpayment of rent, utility charges or reasonable incidental service charges, except that no action for possession may be maintained if, prior to the expiration of a notice to quit, the tenant pays or tenders all arrearages due plus 5% of the outstanding rent or a maximum of $5 as liquidated damages . . . .

10 M.R.S. § 9097(1)(A). With regard to the required notice to quit, the statute further states:

> A tenancy in a mobile home park may be terminated only by:
> . . . . .
> B. . . (1) In cases where the reason for eviction is nonpayment of rent, the tenancy may be terminated by 30 days' notice given in the same manner provided that the notice for eviction contains notice of the amount owed and a statement indicating that the tenant can negate the effect of the notice of termination as it applies to rent arrearage if the tenant pays the full amount of rent due before the expiration of the notice.

10 M.R.S. § 9097(2)(B)(1). While Cleaves concedes that GMHP has the right to add the $8.00 late payment fee for each month rent is not paid, Cleaves argues that payment of the late fee cannot be a requirement to negate the effect of the notice of termination. GMHP argues that because it had the contractual right to include the late fee in the amount due from the tenant, the notice meets the statutory requirements.

2

The analysis must start with the statutory language, as an action for forcible entry and detainer is strictly of statutory origin. *Tozier v. Tozier*, 437 A.2d 645, 647 (Me. 1981). Thus, "to be entitled to a writ of possession upon a complaint for forcible entry and detainer, the party seeking possession must bring himself within the terms of the controlling statute." *Rubin v. Josephson*, 478 A.2d 665, 667 (Me. 1984). The Law Court has recently summarized the rules of statutory construction as follows:

> We review the "court's interpretation and application of a statute de novo, looking first to the plain meaning of the statutory language to give effect to the Legislature's intent." *Teele v. West-Harper*, 2017 ME 196, ¶ 10, 170 A.3d 803. We interpret the plain language "by taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation," *Ford Motor Co. v. Darling's*, 2016 ME 171, ¶ 24, 151 A.3d 507 (quotation marks omitted), and give "technical or trade expressions . . . a meaning understood by the trade or profession," *Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 12, 896 A.2d 271; *see* 1 M.R.S. § 72(3) (2018). In doing so, we seek "to avoid absurd, illogical or inconsistent results." *Andrews v. Sheepscot Island Co.*, 2016 ME 68, ¶ 9, 138 A.3d 1197. We also "consider the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Urrutia v. Interstate Brands Int'l*, 2018 ME 24, ¶ 12, 179 A.3d 312 (quotation marks omitted).

*Wuori v. Otis*, 2020 ME 27, ¶ 6.

Under § 9097(1)(A), the tenancy may be terminated for nonpayment of "rent, utility charges or reasonable incidental service charges." A strict reading of that language does not permit the tenancy to be terminated for non-payment of late fees. That strict reading is bolstered by the remainder of the sentence, which permits the landlord to require the tenant to pay up to $5 as liquidated damages beyond the amount of rent due. The statute clearly differentiates between actual rent and other kinds of charges or fees that the tenant may owe. Thus, although GMHP had the right to charge late fees, the tenancy could only be terminated for non-payment of the rent alone.

3

The analysis does not end there, however. Section 9097(2)(B)(1) governs the required language of the notice to quit, stating it must give notice "of the amount owed" and that the tenant be notified that she can negate the effect of the termination notice if she "pays the full amount of rent due" before the expiration of the notice. If non-payment of a late fee cannot support termination of a tenancy under § 9097(1)(A), it would follow that it cannot be included in the "full amount of rent due" required to be stated in the notice.

GMHP argues that even if the amount stated as rent owed is technically incorrect, that misstatement is excused under the general forcible entry and detainer statute which provides as follows:

> A notice of termination issued pursuant to subsection 1 must indicate the specific ground claimed for issuing the notice.
>> A. If a ground claimed is rent arrearage of 7 days or more, the notice must also include a statement:
>>> (1) Indicating the amount of the rent that is 7 days or more in arrears as of the date of the notice; and
>>> (2) Setting forth the following notice: "If you pay the amount of rent due as of the date of this notice before this notice expires, then this notice as it applies to rent arrearage is void. After this notice expires, if you pay all rental arrears, all rent due as of the date of payment and any filing fees and service of process fees actually paid by the landlord before the writ of possession issues at the completion of the eviction process, then your tenancy will be reinstated."
>> B. *If the notice states an incorrect rent arrearage or contains any other clerical errors that do not significantly or materially alter the purpose or understanding of the notice, the notice cannot be held invalid if the landlord can show the error was unintentional.*

14 M.R.S. § 6002(2) (emphasis added). GMHP argues that to the extent the notice stated an incorrect amount of rent due, the notice was not invalid because such an error was unintentional. Putting aside the issue whether an error can be unintentional when it was in fact what GMHP intended to say, the court disagrees. By its own terms, § 6002(2)(B) only applies to 7-day

4

notices for non-payment of rent issued pursuant to § 6002(1) and therefore does not apply to notices issued under 10 M.R.S. § 9097(2).[1]

In summary, therefore, the notice to quit did not comply with the statute, and there is no provision in the statute excusing that lack of compliance. Because the action is purely statutory, the tenancy was not appropriately terminated, and the court erred when it found otherwise. Therefore, the judgment of the District Court is vacated, and the matter remanded for further proceedings consistent with this opinion.

This Order on Appeal may be incorporated on the docket of the case by reference pursuant to Me. R. Civ. P. 79(a).

Dated: March 19, 2020

Valerie Stanfill
Justice, Maine Superior Court

---

[1] Were it otherwise, the notice issued here would be defective for failure to comply with other requirements of § 6002(2)(B). Specifically, the GMHP notice does not contain any statement that "[a]fter this notice expires, if you pay all rental arrears, all rent due as of the date of payment and any filing fees and service of process fees actually paid by the landlord before the writ of possession issues at the completion of the eviction process, then your tenancy will be reinstated" in accordance with 14 M.R.S. § 6002(2)(A)(2). That statement is not required in notices issued under 10 M.R.S. § 9097(2).

STATE OF MAINE                              SUPERIOR COURT
ANDROSCOGGIN, ss                            DOCKET NO. AP-19-10


Grimmel's Mobile Home Park, LLC    )
                                   )
            *Plaintiff/Appellee,*  )                    MAR 24 '20 AM9:20
                                   )                    ANDRO SUPERIOR COURT
      v.                           )          **Order on Open Motions**
                                   )
Linda Cleaves,                     )
                                   )
            *Defendant/Appellant.* )


On July 22, 2019, Defendant/Appellant Cleaves filed a motion to stay issuance of the writ. It does not appear that the motion was ever acted upon, but based on subsequent filings it appears that the writ was either never issued or never served. Based on the separate order of this court on appeal, however, the motion is moot.

On July 31, 2019, Plaintiff/Appellee Grimmel's Mobile Home Park filed a motion for the transcript to be incorporated o appeal and to enlarge the time to file counter affidavits. It does not appear that the motion was ever acted upon, but the transcript ultimately was indeed part of the record on appeal, and the affidavits referred to were unnecessary as the appeal was on a question of law only. Again, the motions are moot.

This Order on Open Motions may be incorporated on the docket of the case by reference pursuant to Me. R. Civ. P. 79(a).


Dated: March 19, 2020

                                    _____
                                    Valerie Stanfill
                                    Justice, Maine Superior Court